UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| In re<br><br>PHYLLIS M. HILLER,<br><br>         Debtor<br><br>JUDITH HILLER,<br><br>         Plaintiff<br><br>v.<br><br>PHYLLIS HILLER and<br>ANDREW HILLER,<br><br>         Defendants | Chapter 7<br>Case No. 11-12756-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 11-1208 |

MEMORANDUM OF DECISION ON
DEFENDANTS' MOTION TO DISMISS

**Procedural History**

  Judith Hiller, daughter of 91-year old Phyllis Hiller, sued Phyllis in state court in 2006 because Phyllis, by exercise of a special power of appointment, appointed a remainder interest in her home to Andrew Hiller. Andrew is Judith's bother and Phyllis's son. Judith believes the remainder interest is owed to her and her alone; she also contends that she is in any event entitled to recompense from Phyllis for monies she invested to improve the house. Her three-count complaint was dismissed; on appeal, the order of dismissal was affirmed as to two counts, for breach of contract and promissory estoppel, but vacated as to the third, for unjust enrichment, and remanded for further proceedings. Phyllis then filed a petition for relief under chapter 7 of the Bankruptcy Code. Judith, on the strength of her still-unadjudicated claim, is her only possible creditor; Phyllis listed no other creditor in her

schedules.  Judith then filed the present adversary complaint against Phyllis,[1] also in three counts.  Count I seeks dismissal of the bankruptcy case under 11 U.S.C. § 707(b)(1) as a bad faith filing.  Count II is an objection to discharge under 11 U.S.C. § 727(a)(2)(A), the factual basis of which is unclear.  And Count III is an objection to discharge under 11 U.S.C. § 727(a)(5) for failure to explain satisfactorily a loss of assets, specifically, of the funds that Phyllis used to pay for her and Andrew's defense of the state court action.  The adversary proceeding is now before the Court on a motion by Phyllis and Andrew under Fed R. Civ. P. 12(b)(6) to dismiss each of the three counts for failure to state a claim on which relief can be granted.  Judith opposes the motion.

**Standard of Review**

When presented with a Rule 12(b)(6) motion, the Court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).  Subject to certain exceptions, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.*, citing Fed. R. Civ. P. 8(a)(2).

> Although there is no need for "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ––– U.S. –––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).  Accordingly, a complaint must include more than a rote recital of the elements of a cause of action; it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Tambone*, 597 F.3d at 442 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

---

[1] Andrew, too, is named as a defendant, but the complaint seeks no relief against him.

*Artuso*, 637 F.3d at 5.  The First Circuit's approach to the plausibility standard has been usefully distilled as follows:

> [T]o determine whether the factual allegations in the complaint are sufficient to survive a motion to dismiss, the Court "employ[s] a two-pronged approach."  "The first prong is to identify the factual allegation and to identify statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory."  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action."  The second prong is to assess whether the factual allegations "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  If they do, "the claim has facial plausibility."  "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."

*Juarez v. U.S. Bank Nat. Ass'n, Trustee*, 2011 WL 5330465 *2 (D. Mass. 2011) (internal citations omitted).

**Facts**

The complaint alleges as follows.

Judith Hiller is the daughter of the defendant and debtor, Phyllis Hiller.  Phyllis resides at 211 School Street, Westford, Massachusetts ("the Property").  In late 2000 and early 2001, Phyllis and Judith retained the services of an attorney to prepare certain estate planning documents.  One of these, which they executed, was an irrevocable trust ("the Trust") of which Judith was trustee and Judith and Andrew were equal beneficiaries.  At that time, Phyllis transferred the School Street Property to the Trust but retained for herself a life estate.[2]  She also retained a power to appoint the Property to a limited class of persons, including Judith and Andrew but not herself.   She also retained the right to pay for all repairs and maintenance of the Property or to have the trustee, Judith, do so on her behalf.

In the years immediately after the Property was transferred to the Trust, Judith spent approximately $150,000 of her own money and countless hours of her time on substantial renovations

---

[2] The irrevocable trust and the deed were not attached to the complaint.  For the time being, I simply reproduce, and make no determination of the validity of, the subsidiary conclusions of law—whether drawn from these documents or otherwise—in Judith's factual allegations.

to the Property. Judith's expectation and understanding at the time was that the Property had been transferred to her—that is, she believed herself to be the only beneficiary of the Trust—in exchange for the time and money she was spending renovating the Property. Judith did not understand at the time that, under the terms of the Trust, her brother was an equal beneficiary of the trust, even though he was contributing neither time nor money to the renovation. Judith also did not understand that the Trust gave Phyllis the power to "appoint" the property of the Trust to someone other than Judith: that is, to Andrew.

The relationship between Judith and Phyllis deteriorated in 2004, and in 2006 Judith moved out of the Property.[3] In 2006, Judith commenced the state court action against both Phyllis and Andrew, seeking to enforce what Judith contended was her agreement with Phyllis that the Property would be conveyed to Judith, subject to Phyllis's life estate, in exchange for (among other things) Judith's remaining in the property with Phyllis and supervising and paying for the renovation of the Property. Judith also asserted an alternative claim on a theory of quantum meruit/unjust enrichment to recover the value of the time and money Judith had put into the Property.

At that time, Phyllis had more than $100,000 in her bank account, as well as some valuable gold coins. These were available to Phyllis for living expenses, to supplement her income.

A sensible resolution of the lawsuit, and one which would have cost Phyllis almost nothing, would have been for Phyllis to exercise her power under the Trust to appoint the Property to Judith, so that the Property would pass entirely to Judith upon Phyllis's death. This would have had no adverse effect on Phyllis, would not have affected Phyllis's life estate in the Property, would have given Judith what Judith contended Judith was entitled to, and would have preserved Phyllis's limited assets so that they were available to Phyllis for living expenses. However, Andrew saw an opportunity in the dispute

---

[3] Though the complaint does not say so, Judith had been living at the Property with Phyliis for some time.

between Phyllis and Judith.  He manipulated the emotions of his elderly mother, Phyllis, and persuaded her to react to the lawsuit by appointing the entire Property to him.

Even though, as a result of the Property being appointed to him, Andrew was now the only person who stood to benefit from defending the lawsuit—as opposed to settling it in the manner described above—Andrew also persuaded Phyllis to spend her own limited resources vigorously defending the lawsuit.  One law firm was retained to represent both Phyllis and Andrew.  On behalf of Phyllis and Andrew, that law firm managed to get dismissed, on summary judgment (which dismissal was affirmed on appeal), the claim that, had Judith prevailed, would have required Phyllis to appoint the Property to Judith.  This outcome, achieved at great expense, was of absolutely no benefit to Phyllis but of substantial benefit to Andrew.

Phyllis has paid at least half, and perhaps all, of the legal fees to defend the state court action.  Given who stood to benefit from a successful defense of that action, Andrew should have paid all of the legal fees to defend that lawsuit.

Judith's other claim, for recovery under the theory of quantum meruit/unjust enrichment, was also dismissed on summary judgment, but that dismissal was reversed on appeal.  Trial of that matter was scheduled for April 27, 2011.  On March 30, 2011, Phyllis filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Judith is the only creditor listed on Phyllis's schedule.  Judith's claim in the state court action is the only debt that Phyllis seeks to discharge.

One important reason for Phyllis's bankruptcy filing was that she was concerned that if she lost the state court action, Judith might seek to enforce the judgment against Phyllis's interest in the Property and throw her out of the Property, leaving her with no place to live.  However, even if Judith obtained a judgment against Phyllis in the state court action, it would be unenforceable against her life estate in the property.  That interest is protected by the automatic homestead exemption afforded by MASS. GEN. LAWS ch. 188, § 4, up to $125,000, which amount exceeds the actuarial value of Phyllis's life

5

estate. Therefore, one of the primary reasons for Phyllis to file the bankruptcy petition—to retain the ability to live in her house should she lose the state court action—was baseless. Phyllis has virtually no assets other than her life estate in the Property and her ability to appoint the remainder interest in the property to Judith. Therefore, she can gain nothing by filing her bankruptcy petition.

The real reason that Phyllis's bankruptcy petition was filed is that, once again, Andrew manipulated his elderly mother into believing that the bankruptcy filing was the only way she could be sure of being able to remain in the Property for the remainder of her life. This bankruptcy process, which will be of no practical benefit to Phyllis even if she obtains a discharge, but which is nevertheless being paid for by Phyllis, was filed at Andrew's urging and primarily, if not solely, for his benefit.

The schedules that Phyllis filed in connection with her bankruptcy petition contain a number of material misstatements and omissions. These include the following:

    a. On Schedule A, the schedule of real property, Phyllis listed only the actuarial value of her life estate in the property. In fact she also has a power of appointment which she can exercise in favor of Judith, her only creditor. It should be considered an asset and should have been listed on Schedule A.

    b. On her Statement of Financial Affairs at question 14, Phyllis was required but failed to list certain property "owned by another person that the debtor holds of controls": specifically, the property whose legal title is held by Judith, as trustee, and whose beneficial interest is held by Andrew. Phyllis controls this property. She has the power to appoint it to Judith or Andrew, the power to use Trust assets for maintenance and repair of the Property, and the power to authorize the trustee to mortgage the Property.

6

    c. On Schedule B, the schedule of personal property, Phyllis failed to list the value of certain gold coins, which she owned at least as late as December 2007 and still owns.

    d. Also on Schedule B, Phyllis failed to list a debt owed to her by Andrew. Phyllis has been paying all or a portion of the legal fees to defend the state court action, even though all or most of those fees should be the responsibility of Andrew, the only person who stands to benefit from a successful defense of that action.

These are the facts as Judith has alleged them.

**Count I: For Dismissal of the Bankruptcy Case Pursuant to § 707(b)(1)**

In Count I, which incorporates all the foregoing allegations of fact, Judith contends simply that the bankruptcy petition was not filed in good faith and therefore, pursuant to 11 U.S.C. § 707(b)(1), should be dismissed. Although Fed. R. Bankr. P. 1017(e)(1) requires a party moving to dismiss under § 707(b)(1) to state with particularity the circumstances alleged to constitute abuse, nowhere in Count I or in the complaint more generally has Judith indicated precisely how the alleged facts show bad faith or where the bad faith lies. In her Rule 12(b)(6) Motion, Phyllis argues that the complaint does not allege bad faith on the part of Phyllis, only that Andrew manipulated Phyllis into filing for his own benefit; undue influence on the part of Andrew is not bad faith on the part of Phyllis.[4] In response to the motion to dismiss, Judith argues that § 707(b)(1) requires dismissal of an individual's chapter 7 case where the granting of relief would be an abuse of the provisions of chapter 7, that in determining whether the granting of relief would be such an abuse, the court must consider (i) whether the debtor filed the petition in bad faith or (ii) whether the totality of the circumstances of the debtor's financial situation

---

[4] Phyllis also argues that, for various reasons, the alleged omissions from Phyllis's schedule do not state a basis on which the court could find bad faith. However, at the hearing on the Rule 12(b)(6) Motion, Judith, in articulating the basis of Count I, did not mention the omissions. The omissions are therefore irrelevant to Count I, and Phyllis's arguments about them are moot.

demonstrates abuse, 11 U.S.C. § 707(b)(3), that the filing was in bad faith because its purpose was to protect Phyllis's right to dispose of her property according to her current estate plan, and that the totality of the circumstances demonstrates abuse because it shows that Phyllis has the ability to pay the judgment that Judith seeks against her.  She may pay the debt, Judith alleges, by reappointing the Property to Judith or by authorizing Judith, as trustee of the Trust, to mortgage the Property to pay off the debt to her.  Recognizing that the totality of the circumstances theory was not pleaded in the complaint, Judith moved, both in her response to the Rule 12(b)(6) hearing and orally at the hearing on that motion, for leave to amend her complaint accordingly.  She contends that, where no responsive pleading has been filed, she has an absolute right to amend.  Phyllis has voiced no objection to amendment.

     **a. Adversary Complaint as Vehicle for Request to Dismiss for Abuse under § 707(b)**

A request to dismiss a case under § 707(b) is generally made by a motion filed in the bankruptcy case.[5]  The use of an adversary complaint instead of a motion raises two concerns.  First, it is procedurally more cumbersome than a simple motion, and unnecessarily so.  Second, where the parties to the adversary proceeding are limited to the creditor and the debtor, other parties with an interest in the matter—the chapter 7 trustee, other creditors, and the United States trustee—may be inappropriately excluded.  Neither of these concerns warrants requiring Judith to start over with a motion.  If anything, her choice of an adversary complaint merely affords Phyllis perhaps more process than would otherwise be required.  As for other parties, there are no other creditors in this case; and the chapter 7 trustee and United States trustee, though not named as parties, were at least served with the complaint when it was filed, as Fed. R. Bankr. P. 1017(e) requires, and neither has responded with a

---

[5] See Fed. R. Bankr. P. 9014(a) ("In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion[.]"), 1017(e) ("The court may dismiss . . . an individual debtor's case for abuse under § 707(b) only on motion"), and 1017(f)(1) (subject to certain exceptions not applicable here, "Rule 9014 [specifying procedure for contested matters] governs a proceeding to dismiss . . . a case").

8

request to intervene or be heard. In addition, the subject matter of this count is related to the objections to discharge in Counts II and III, and therefore there is efficiency in joining all three counts in one proceeding. Phyllis has not objected to the process employed. For these reasons, I will not strike Count I as procedurally inappropriate.

### b. The Merits

I begin with the relevant statute and rules. Under § 707(b)(1), the court "may dismiss a case filed by an individual debtor under this chapter [chapter 7 of title 11] whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). In certain cases, a presumption of abuse arises. See 11 U.S.C. § 707(b)(2). The parties agree that no presumption of abuse arises in this case. When a presumption of abuse does not arise, the court, in considering whether the granting of relief would be an abuse of the provisions of chapter 7, "shall consider (A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3). Recourse to § 707(b) is limited. One such limitation is that when the debtor is a so-called "below-median debtor," only the judge or the United States trustee may file a motion to dismiss under § 707(b). 11 U.S.C. § 707(b)(6) ("Only the judge or United States trustee . . . may file a motion under section 707(b), if the current monthly income of the debtor . . . as of the date of the order for relief, when multiplied by 12, is equal to or less than—in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner.").

Phyllis's Rule 12(b)(6) motion focuses on the ultimate question of whether the granting of relief would be an abuse of the provisions of chapter 7. To establish that abuse, Judith alleges that Phyllis filed the petition in bad faith and that the totality of the circumstances, especially Phyllis's ability to pay, establishes abuse. Neither the concept of bad faith nor the totality of the circumstances test has clearly-defined parameters, which makes them ungainly in the context of a Rule 12(b)(6) motion. Even without

9

reaching the issue of abuse, however, it appears for two reasons that Judith does not have a claim on which relief can be granted.

First, it appears to be undisputed that Phyllis's current monthly income as of the date of the order for relief, when multiplied by 12, is equal to or less than the Massachusetts median family income for a single earner.[6]  If so, then under § 707(b)(6), only a judge or the United States trustee, but not a creditor, may file a motion to dismiss under § 707(b).  In short, Judith, a creditor, appears to be statutorily precluded from moving for dismissal under § 707(b).  However, this particular deficiency in Count I is not apparent from the complaint itself and was not raised as cause for dismissal in Phyllis's Rule 12(b)(6) motion.   Judith is entitled to be heard on this basis for dismissal, which the Court is raising now for the first time.

Second, § 707(b) applies only to the chapter 7 cases of individual debtors "whose debts are primarily consumer debts."  11 U.S.C. § 707(b)(1).  "Consumer debt" means "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8) (defining consumer debt for purposes of the Bankruptcy Code).  Phyllis's only debt is her alleged liability to Judith in the state court action on a theory of quantum meruit/unjust enrichment to recover the value of the time and money Judith invested to improve the Property.  It is doubtful that the alleged liability to Judith is "consumer debt" within the meaning of the statute.  Judith has not expressly so alleged and has not addressed the "consumer debt" requirement in her response to the Rule 12(b)(6) motion, but neither has Phyllis invoked that requirement as a basis for her Rule 12(b)(6) motion.  The parties simply have not addressed the issue.

---

[6] This fact is not alleged in the complaint, but at the hearing on this motion, Phyllis's counsel stated that Phyllis passed the so-called "means test" with flying colors, such that no presumption of abuse arose in her case.  Judith did not contest this statement and likely would have done so had it enabled her to take advantage of the presumption of abuse in § 707(b)(2).  Phyllis's unconstested Chapter 7 Statement of Current Monthly Income and Means-Test Calculation bears out her attorney's contention that her income is dramatically below the Massachusetts median.

10

Therefore, instead of addressing the poorly-defined parameters of bad faith and totality of the circumstances as they apply to the unusual circumstances of this case, the Court will issue an order to show cause why Count I should not be dismissed for each of the two reasons articulated above:  (i) under §707(b)(6), Judith may not file a motion under § 707(b); and (ii) Phyllis's debts are not primarily consumer debts.

**Count II:  For Denial of Discharge under § 727(a)(2)(A)**

In Count II, Judith simply states that, "based on the foregoing facts"—that is, the allegations recapitulated above—"Phyllis has failed to disclose all of the assets which she owned or over which she had control as of March 30, 2011," the date of her bankruptcy filing.  "Accordingly, [Phyllis's] discharge should be denied pursuant to § 727(a)(2)(A)."  Phyllis argues that this count should be dismissed for two reasons.  First, an objection to discharge under § 727(a)(2)(A) sounds in fraud and therefore requires pleading with particularity, but Judith has not plead this count with particularity; her complaint does not give adequate notice of Judith's basis or bases for nondischargeability.  Second, Phyllis argues that Judith has not alleged that Phyllis had actual intent to hinder, delay, or defraud her, which § 727(a)(2)(A) requires.  Judith responds that the gravamen of this count is Phyllis's failure to disclose a number of significant assets to the Bankruptcy Court:  (i) the power of appointment over the Property; (ii) the powers reserved to Phyllis in the Trust, "including the power to mortgage the property to pay for debts related to maintenance and upkeep of the property, inasmuch as the property was placed in trust by Phyllis and is thus in a so-called "self-settled" trust; and (iii) "the debt owed to Phyllis by Andrew, to the extent Phyllis has been paying the legal fees for the state court action."  Judith adds that though this count is pleaded under subsection 727(a)(2)(A), it may more properly be asserted under subsection 727(a)(4)(A) (denial of discharge for knowing and fraudulent making of a false oath in the bankruptcy case); to the extent that the Court concludes that this count should have been asserted under § 727(a)(4)(A), she asks for leave to amend the complaint.  Judith does not attempt to show that the

11

above-cited incidents of nondisclosure do in fact state a claim under § 727(a)(2)(A), but she does state that § 727(a)(2)(A) "may be applicable to the extent Phyllis has paid the legal fees for Andrew in the state court action."

I begin by considering this count under the subsection invoked in the complaint, §727(a)(2)(A). It requires denial of discharge where

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed,
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. §727(a)(2)(A). To state a claim under this subsection, a complaint must (i) allege that the debtor committed one of the predicate acts and specify which of the predicate acts was committed (transfer, destruction, concealment, etc.), (ii) specify the property in issue and indicate whether it was property of the estate or property of the debtor, (iii) specify that the transfer occurred in the applicable time period, and (iv) allege that the debtor committed the predicate act with the necessary specific intent. Because this subsection sounds in fraud, the requirements must be pleaded with particularity. The complaint must put the debtor on clear notice of the charge of fraud against which she must defend.

Count II fails to satisfy these requirements in a number of ways. First, it does not specify the acts or assets in question. The complaint elsewhere does allege acts that might constitute concealment as to specified assets, but Count II does not indicate whether those, or some or all of them, are the basis of this count. Judith's response to the motion to dismiss partially rectifies this deficiency by identifying three incidents of nondisclosure on which Count II is based; but her response still does not indicate that this nondisclosure constituted "concealment" or one of the other predicate acts listed in § 727(a)(2)(A). Second, neither in Count II nor elsewhere in the complaint does Judith allege that Phyllis's failures of

disclosure were committed with the necessary specific intent: intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title. Nor is an allegation of fraudulent intent implicit in the allegation of failure to disclose. The alleged falsity of each of the alleged nondisclosures is dependent on a conclusion of law that is hardly self-evident, even to an attorney but all the more to a lay person: that after exercise of the power of appointment, Phyllis continued to have a power of appointment over the remainder interest; that after exercise of the power of appointment, the trust had a res to which the retained powers might apply; that a voluntary payment of the fees of another, without more, gives the donor an enforceable right to obtain repayment of those fees—that a gift is not a gift. Moreover, in her response to the Motion to Dismiss, Judith still has not made an allegation of intent to hinder, delay, or defraud. In fact, she has made no attempt at all to show that three cited incidents of nondisclosure do in fact state a claim under subsection 727(a)(2)(A). For these reasons, I conclude that Count II fails to state a claim under § 727(a)(2)(A).

Next Phyllis states that § 727(a)(2)(A) "may be applicable to the extent Phyllis has paid the legal fees for Andrew in the state court action." Phyllis payment of the legal fees is not one of the grounds pleaded as a basis for Count II; as currently stated, Count II is based only on failures to disclose, and she has not moved to amend the complaint. In addition, Judith nowhere makes two allegations that would be necessary for the payment of the legal fees to constitute a basis for nondischargeability under §727(a)(2)(A): that Judith's payment of fees occurred in a relevant time period, and that they were made with intent to hinder, delay, or defraud. For lack of these allegations, the complaint does not, in Count II or elsewhere, state a claim under § 727(a)(2)(A) on the basis of the payment of fees.

In the alternative, Judith asks that the Court consider her allegations of nondisclosure as stating a claim under subsection 727(a)(4)(A), under which a debtor will be denied a discharge where "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). In order for Judith's allegations of nondisclosure to state a cause of action under

this subsection, they would need to include allegations that the debtor's failures of disclosure were made knowingly and fraudulently. The complaint includes no such allegations, and Judith does not now contend that the omission was an oversight or seek leave to amend the complaint. Therefore, Count II does not state a claim under § 727(a)(4)(A) and must be dismissed.

**Count III: For Denial of Discharge under § 727(a)(5)**

In Count III, Judith alleges (in addition to the facts recited above) that "Phyllis Hiller has failed to explain a loss of assets. . . . Phyllis's cash and cash-equivalents have been used to fund the defense of a lawsuit primarily, in not entirely, for the benefit of Andrew. Accordingly, [Phyllis's] discharge should be denied pursuant to 11 U.S.C. § 727(a)(5)." Phyllis contends that this count should be dismissed for two reasons: first, it is premature because no one has asked her to explain any loss of assets; and second, the allegation itself explains what happened to the assets: they were used to defend a lawsuit. In response, Judith does not answer either of the reasons offered for dismissal. Instead she says that she has not had an opportunity to conduct discovery on this count. Notably, she adds:

> [I]f discovery reveals (as appears likely) that Phyllis has exhausted her assets paying for a lawsuit to benefit only Andrew, this would certainly constitute a failure to *satisfactorily* explain the loss of those assets; "I spent virtually all my money defending a lawsuit for the benefit of my son" is not, in this context, an acceptable explanation.

Section 727(a)(5) states: "The court shall grant the debtor a discharge, unless . . . (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). In relevant part, it requires a failure to explain satisfactorily a loss of assets. That is not what Judith complains of. Rather, what she alleges, the gravamen of the count as pleaded, is a failure or inability to *justify* the loss. As Phyllis points out, Judith knows what happened to the assets. In fact she identifies the assets in question by the manner in which they were lost: those cash and cash equivalents *that were used to defend the lawsuit for the benefit of Andrew*. What she contends is that the use of the

14

funds for this purpose was not justified; that is, the funds were not used for a valid or appropriate purpose. Justification is beyond the scope of subsection (a)(5). An explanation must be satisfactory, but in subsection (a)(5), satisfactory modifies explanation, not loss. Provided the debtor knows what happened to the assets and her explanation is convincing, it will be satisfactory. A debtor need only account for the loss, tell how it happened. She need not also defend the manner of loss. Even if the manner of loss were wholly reprehensible—such as a fraudulent transfer, or utter and spiteful waste—a truthful and convincing explanation would suffice and would obviate cause for denial of discharge under this subsection. In contrast, subsection (a)(2) does permit denial of discharge for certain losses of assets—by the debtor's transfer, removal, or destruction of an asset with intent to hinder, delay, or defraud; it expressly does inquire into the manner of disposition.[7] 11 U.S.C. § 727(a)(2)(A). In short, what Judith alleges is not within the scope of subsection (a)(5) and therefore fails to state a claim on which relief can be granted.[8]

**Conclusion**

For the reasons set forth above, the Court will allow the Rule 12(b)(6) motion as to Counts II and III and, as to Count I, issue an order to show cause why they should not be dismissed because (i) under §707(b)(6), Judith may not file a motion under § 707(b) and (ii) Phyllis's debts are not primarily consumer debts.

Date:  November 13, 2012

_____
Frank J. Bailey
United States Bankruptcy Judge

---

[7] Judith has not suggested that, in the alternative, the facts on which Count III is based would support an objection to discharge under § 727(a)(2)(A). Nor has she alleged that Judith's payment for defense of the state court action was done with intent to hinder, delay, or defraud a creditor, which subsection (a)(2)(A) would require.

[8] Having so concluded, I need not address Phyllis's argument that this count is premature.

15